Argued and submitted February 28,
reversed and remanded April 21, 1980

ORTIZ, et ux,
*Petitioners,*

*v.*

ADULT AND FAMILY
SERVICES DIVISION,
*Respondent.*

(No. 82-1101-HER518-6, CA  15014)

609 P2d 1309

Roberta J. Lindberg, Lane County Legal Aid Serice, Eugene, argued the cause and filed the briefs for petitioners.

Karen H. Green, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Campbell, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Petitioners have petitioned for judicial review of an Adult and Family Services Division final order that Aid to Dependent Children-Unemployment, (hereafter ADC-UN), assistance to petitioners be suspended for 60 days.[1] The ground for suspension was that petitioner Larry Ortiz on or about February 16, 1979, "* * * refused to accept employment without good cause." We review under ORS 183.482(8), and reverse.

Petitioner was an ADC-UN recipient when he was referred by the Employment Division to a tree planting job to begin on February 16, 1979. There is no question that petitioner was capable of performing the work. However, for reasons we need not discuss, he failed to report for work at the job site. On March 5, 1979, the Division served petitioner with a "Notice of Planned Payment Action" dated that same day, informing him: "You quit a job without good cause. This action results in the suspension of [your] grant for 60 days. Therefore we propose to suspend your grant effective March 10, 1979. * * *" For reasons we also need not discuss, the 60-day suspension (for which provision was made under a since-repealed administrative rule) began on March 17, 1979. Following the hearing contesting the suspension, the Division's hearing officer "ordered":

"It is ordered that on or around 2-16-79, Larry Ortiz refused to accept employment without good

[1] ADC-UN was the administrative term for aid to a child who is dependent by reason of the unemployment of a parent. Though the statutory basis for such aid remains, *see* ORS 418.070, the term "ADC-UN" and the rules for the program's administration were succeeded during the pendency of this appeal by the Work or Training for Two Parent Households (WORTH) program, administered under OAR 461-05-500 to 461-05-625. ORS 418.075 applied to the ADC-UN program:

"Aid * * * shall *not* be granted * * * if, and for so long as, the unemployed parent of such child refuses without good cause to accept employment in which he is able to engage and which is offered through any employment office defined in subsection (7) of ORS 657.010 [which includes offices of the Employment Division] or which is otherwise offered by any employer if such offer is determined by the Adult and Family Services Division after notification by such employer to be a bona fide offer of such employment."

[927]

cause. The Branch Office action to suspend ADC-UN assistance to claimant and his family for a period of 60 days is upheld."

The several assignments of error presented by petitioner as grounds for reversal allege mostly errors in procedure, such as deficiencies of the notice and resort by the hearing officer to facts outside the record. One of petitioner's contentions that both disposes of the case in petitioner's favor and affords the complete relief petitioner seeks, is that the suspension of assistance for refusing employment without "good cause" cannot stand because "good cause" was not defined by statute or administrative rule.

To paraphrase *McPherson v. Employment Division,* 285 Or 541, 550, 591 P2d 1381 (1979), the requirement in ORS 418.075, that an unemployed parent of a child receiving assistance may not refuse an offer of employment encompassed by the statute without "good cause," requires the Division to complete a value judgment that the legislature itself has only indicated: evaluating what are "good" reasons for refusing an employment offer and what are not. Under the criteria identified in *Oliver v. Employment Division,* 40 Or App 487, 494, 595 P2d 1252 (1979)—the breadth of the policymaking responsibilities delegated to the Division by ORS 418.100 and the volume of cases the Division must handle—the mode required for completing that value judgment is the adoption of administrative rules.

We note that after the petition for review was filed in this case, the Division adopted a rule under its WORTH program which defines "good cause" for refusing employment.[2] The Division argues, in addition,

---

[2] OAR 461-05-524:

"Good cause for refusing employment or training referral, quitting a job, or causing dismissal will be determined to exist when:

"(1) Participation would impair the individual's physical or mental health.

that up through the hearing, it had included in its office manual for caseworkers a similar "good cause" definition. However, policy statements not promulgated under the Administrative Procedures Act's rulemaking provisions are not rules, *Burke v. Children's Serv. Div.,* 26 Or App 145, 148, 552 P2d 592 (1976), and thus the Division had no rule defining "good cause" for refusing employment in effect at any stage of its proceedings against petitioner. It remains only to state the consequences that follow from the Division's adjudication of this case in the absence of such a rule.

The situation here is similar to that in *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980), where the Board set out to revoke a dentist's license to practice dentistry on the statutory ground of "unprofessional conduct," under ORS 679.140(1)(c) and (2). Upon finding that the specific conduct alleged did not fit any of the statutory definitions of the term, and that the Board had not used its authority to expand by rulemaking the statutory list of conduct deemed unprofessional and thereby proscribe the conduct alleged, the court held:

> "* * * [Petitioner's] license has been revoked under a statutory standard of 'unprofessional conduct,' which was broadened beyond its original list of specifications, which the statute means the board to particularize by rules. * * * No such rule having been made to proscribe the kind of conduct charged against petitioner, there was no legal ground on which to revoke his license. The board 'erroneously interpreted a provision of law,' namely ORS 679.140(1)(c) and (2),

"(2)  The work or training is unusually dangerous.

"(3)  The [applicant or recipient] lives more than two miles from employment or pick up point and has no means of transportation to either.

"(4)  The employment or training will provide less than the required income and hours of work necessary to qualify for a WORTH supplement as provided in rule 461-05-535.

"(5)  The position is vacant due to a strike, lockout, or other labor dispute."

[929]

in believing that the standard could be applied ad hoc to facts not covered by a specification in subsection (2) or a rule adopted pursuant to ORS 679.250(7). The error could not be cured on a remand. Thus ORS 183.482(8)(a)(A) requires that the board's order be reversed." 288 Or at 320-21.

The Supreme Court's assessment in *Megdal* of the effect of the Board's failure to particularize the "unprofessional conduct" standard in ORS 679.140 applies with equal force to the Division's failure here to particularize the meaning of "good cause" in ORS 418.075.

Petitioner also contends that the Division erred in suspending assistance payments to him pending hearing. Among the Division's rules is the following provision, OAR 461-09-122:

> "In cases involving incorrect action of the Adult and Family Services Branch Office * * * a final order in favor of the claimant applies retroactively to the date the incorrect action was taken * * *."

We assume the Division will follow its own rules, *Moore v. OSP,* 16 Or App 536, 537, 519 P2d 389 (1974); *Williams v. Joyce,* 4 Or App 482, 506, 479 P2d 513 (1971), and that a corrective payment will be made to petitioner for assistance withheld during the unlawful suspension.

Reversed and remanded.