Argued and submitted August 20, affirmed in part,
reversed in part and remanded December 1, 1980

EMPLOYERS MUTUAL LIABILITY
INSURANCE COMPANY OF WISCONSIN,
*Petitioner,*

*v.*

INSURANCE DIVISION,
*Respondent.*

(No. 76-3-4, CA 15070)

620 P2d 497

Elizabeth K. Reeve, Portland, argued the cause for petitioner. With her on the briefs were Schwabe, Williamson,

Wyatt, Moore & Roberts and Wayne A. Williamson, Portland.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Employers Mutual Liability Insurance Company (Employers) seeks review of the order of the Insurance Division (Division) finding that it violated two provisions of the Insurance Code, one prohibiting unfair discrimination between risks of essentially the same degree of hazard, and one prohibiting misrepresentation in the offer or sale of insurance. The alleged violations arose from the use of an assumed loss ratio in the calculation of dividends in participating workers' compensation insurance policies sold to two different insureds. We affirm in part, reverse in part and remand.

Employers is an insurance company which sells workers' compensation coverage in this state. One type of workers' compensation policy, known as a participating policy, provides for dividends payable to the insured after the policy period expires. Such dividends may be "flat", where the policy sets a maximum flat dividend, or "par", where dividends are determined according to a sliding scale based in part upon the ratio between the losses suffered by the insured and the premiums paid. The policies which gave rise to the alleged violations here were both "par" policies in which dividends were to be determined in part by the insured's loss ratio. Aside from that similarity, the two violations at issue here involve different insureds and different fact situations and will, therefore, be discussed separately.

### UNFAIR DISCRIMINATION

The charge of unfair discrimination arises from a policy issued to Leonetti Manufacturing Company (Leonetti) on August 1, 1973. Employers had previously insured Leonetti under two different workers' compensation policies which provided for a flat dividend percentage. The policy issued on August 1, 1973, however, was a "par", or sliding scale participating policy.

Regarding dividends, the policy provided:

"The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in distribution of dividends so fixed and determined."

The Premium Refund Endorsement - Sliding Scale incorporated into the policy provided:

> "It is agreed that, with respect to premium earned in Oregon, the insured shall be entitled to such premium refund (dividends) from divisible surplus as shall be determined by the Board of Directors *under the sliding scale refund schedule Plan D in effect and applicable to the policy at the time of expiration,* provided no premium shall remain unpaid after written demand therefor."(emphasis supplied)

The par policy was issued for a one year period, but Leonetti became dissatisfied with Employers' claim service and cancelled the policy effective November 1, 1973, after being assured in writing that cancellation would not result in a penalty.

On February 26, 1974, Employers' Board of Directors declared dividends to policyholders participating under a sliding scale plan. In July, 1974, the Board purported to amend the sliding scale refund plan D, to be effective as to policies expiring in September, 1973, and thereafter, as follows:

> "If any policy written under these plans is canceled or not renewed, at the option of the company, minimum losses may be reestablished as losses incurred in an amount up to 50% of the premium on such policies."

In May, 1975, dividends were declared for sliding scale participating policies which expired in July, 1974. This was apparently the resolution which was considered applicable to the Leonetti policy because that policy, had it not been cancelled, would have expired on July 31, 1974.[1]

Leonetti's losses during the period in which the par policy was in force were low, its actual loss ratio being 27.7 percent. When dividends were distributed, however, the assumed 50 percent loss ratio was applied; instead of receiving the $1039.99 which would have been its dividend under its actual 27.7 percent loss ratio, Leonetti received $407.06.

---

[1] The treatment of Leonetti's policy as one expiring in July of 1974 may explain why Employers believed that it could amend the terms of the refund plan after Leonetti cancelled, but before the July 31, 1974, expiration date.

Leonetti objected and eventually received the full amount of its refund based on its 27.7 percent loss ratio, rather than the assumed loss ratio, but only after seeking help from the Workers' Compensation Board, the Insurance Commissioner's office and the Anti-Trust Divisions of the California and Oregon Departments of Justice.

The Division filed a notice of hearing to determine whether Employers had engaged in enumerated unfair trade practices, including the one under consideration here. A hearing was held in May, 1976, written arguments were submitted by March, 1977, and the Commissioner issued his opinion and order on May 31, 1979.[2] Employers petitioned for reconsideration and that petition was granted. A revised order was issued on February 13, 1980. The revised order amended the original conclusions of law and order only; the findings of fact, findings of ultimate fact and opinion were not changed.

The facts related above are essentially those found by the Commissioner. He found as an ultimate fact that Employers assessed the assumed loss ratio penalty against Leonetti because Leonetti cancelled its workers' compensation policy and that policyholders who did not cancel were not assigned an assumed loss ratio.[3] The revised order determined that Employers had unfairly discriminated against Leonetti by giving unequal dividends.

In his opinion the Commissioner explained Employers' use of the assumed loss ratio as follows:

"Viewed in its best light [Employers'] ostensible purpose in assessing the assumed loss ratio is to avoid the losses occurring after the policy has ended. While most employee injuries are treated and compensated before the policy expires and before dividends are paid, some injuries do not manifest themselves until later. * * * The number of these post-dividend losses is few, but their occurrence is

---

[2] No one has attempted to explain the delay of over two years between the submission of arguments and the issuance of the order by the Division.

[3] The record contains virtually no information regarding which, or how many, of Employers' policyholders were assigned an assumed loss ratio. We do not take this finding to suggest that non-renewing policyholders were treated differently than those who cancelled.

always a possibility. * * * An example might be the discovery of an unforeseen back injury arising as a complication of an injury originally thought to be relatively minor. Since the policyholder has been paid dividends before the employee discovers his injury, the injury is not reflected in his 'experience' for that period; hence, it might be argued, the policyholder's dividends were too high. By substituting an 'assumed loss ratio' of 50%, however, Employers of Wausau could attempt to shift the possibility of a loss development 'tail' from itself to the policyholder.

"This is apparently the justification here. Instead of recognizing Leonetti's low loss of 27.7%, Employers of Wausau arbitrarily 'assumed' their loss to be 50% because of cancellation." (Citations to transcript omitted).

The statute under which Employers is charged with respect to the Leonetti policy is ORS 746.015(1), which provides in pertinent part:

"No person shall make or permit any unfair discrimination between * * * risks of essentially the same degree of hazard, in availability of insurance, in the application of rates for insurance, in the dividends or other benefits payable under insurance policies, or in any other terms of conditions of insurance policies."

The Commissioner's Findings of Fact, along with the Findings of Ultimate Fact and Opinion make clear what Employers did in its dealings with Leonetti and what it expected to accomplish by imposing the assumed loss ratio. Employers does not find fault with the findings of the Commissioner in its appeal. It does challenge the Commissioner's conclusion that those facts constituted "unfair discrimination between risks of the same degree of hazard."

Our review of this matter is pursuant to ORS 183.482. Subsection (8) of that statute sets out three possible types of agency error reviewable by this court:

"(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwide in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record."

Employers argues on appeal that the facts presented here "simply do not support a finding of unfair discrimination." Because it is not certain under which of the subsections of ORS 183.482(8) such a contention fits, Employers claims error in all three.

■ We need not decide which kind of claimed error Employers' contention asserts because we cannot review this order as it stands under any of those provisions. The findings of fact made by the Commissioner are extensive as they relate to the events which transpired between Employers and Leonetti, but the conclusions he draws from those facts are not presented in such a way as to permit meaningful judicial review. It is clear that the he was aware of his obligation to articulate the basis of his order; his opinion is an obvious attempt to explain the connection between the findings of fact and the conclusion that the application of the assumed loss ratio to Leonetti constituted unfair discrimination between risks of the same degree of hazard. We hold, however, that the opinion fails in its effort to demonstrate that connection. Without the benefit of that rationale, we are not able to review the conclusion that Employers committed unfair discrimination.

We have often cited *Home Plate, Inc. v. OLCC,* 20 Or App 188, 190, 530 P2d 862 (1975), in describing the requirement for a clearly expressed rationale for agency action:

"If there is to be any meaningful judicial scrutiny of the activities of an administrative agency - not for the purpose of substituting judicial judgment for administrative judgment but for the purpose of requiring the administrative agency to demonstrate that it has applied the criteria prescribed by statute and by its own regulations and has

not acted arbitrarily or on an ad hoc basis - we must require that its order clearly and precisedly state what it found to be the facts *and fully explain why those facts lead it to the decision it makes.*" (Emphasis supplied). *See also McCann v. OLCC,* 27 Or App 487, 493-94, 556 P2d 973 (1976), *rev den* (1977); *Graham v. OLCC,* 25 Or App 759, 551 P2d 112, *rev den* (1976); *Battle Creek Golf Course v. OLCC,* 21 Or App 179, 185, 534 P2d 204 (1975).

In *McCann v. OLCC, supra,* we noted that, where predecisional criteria are not set out beforehand, "* * * we look to the decision itself for a rational exposition of the facts and the reasoning which leads from the facts to the conclusion." *Id.,* at 495.[4]

The term "unfair discrimination" between risks of essentially the same degree of hazard is, under *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979), a term which " * * * calls for completing a value judgment that the legislature itself has only indicated * * *." *Id.,* at 550. While the requirement for a clear statement of the reasoning behind the agency's decision is well-known, explaining the application of that requirement to the order at issue here is more difficult. The Commissioner set out five "difficulties" with Employers' application of the assumed loss ratio to the Leonetti policy.[5] We take these to be an

---

[4] The Division has, subsequent to Employers' actions in dealing with Leonetti, promulgated regulations which address the reduction of dividends for nonrenewal of an insurance policy. Those regulations indicate that such a practice will be considered unfairly discriminatory. OAR 836-80-140 and OAR 836-80-145. Those regulations, however, were not in effect at the time of actions complained of here.

It does not appear that, under the criteria identified in *Oliver v. Employment Division,* 40 Or App 487, 595 P2d 1252 (1979) and applied in *Ortiz v. Adult & Family Services Division,* 45 Or App 925, 609 P2d 1309 (1980), prior rulemaking is *necessarily* required. We are not able to decide whether, under *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980), prior rulemaking was required here without benefit of the Division's rationale for finding this practice unfairly discriminatory.

[5] The hearings officer's opinion states:

"Certain difficulties accompany this reasoning. First of all, in a typical workers' compensation policy, 'tail' losses are *not* shifted back to the period when the injury *occurred.* Instead, they are borne by the insurer as part of the expense of handling the risk in the period in which the losses are *paid.* * * * Ultimately, the loss is reflected in the dividends of the year that the injuries are compensated.

attempt to explain the relationship between the facts and the conclusion of unfair discrimination. However, these "difficulties" only further explain the operation of the sliding scale policy and the operation of a "typical" policy and express concerns which relate to what might be a breach of the contract between the parties.[6] The concern with breach of contract is not only beside the point in discussing unfair discrimination here, but we have no way of knowing what part that concern played in the Commissioner's final determination. Although there is also a conclusory statement that there is no good reason for applying an assumed loss ratio only to policyholders who cancel or fail to renew, this is not an explanation.

"Secondly, the payment of dividends to participating policyholders is only partially determined by reference to the insured's losses. Payment of dividends may not be delayed merely because of the possibility of a 'tail' loss. * * * A fortiori, dividends cannot be denied altogether. The losses a policyholder incurs are only a 'yardstick,' a general measure for determining the dividends to be paid. * * * And, to the extent that dividends are based on losses, only the losses incurred *during* the policy period, and not those arising before or after, are used in calculating dividends on a sliding-scale dividend plan. * * *

"Thirdly, if losses arising before or after the policy period are to be used to calculate the dividend, this measure *must be agreed to beforehand and incorporated into the policy.*

"Fourthly, applying an assumed loss ratio would be fair only it is were applied to *all* policyholders. There is no good reason for applying it just to those policyholders who cancel or fail to renew. This is particularly true where, as here, the dividends due a policyholder are calculated according to his loss 'experience' during the policy period, and *not* according to his experience in prior or subsequent periods.

"Finally, even a favorable view of 'assumed loss ratios' cannot justify the arbitrary application of this penalty to policyholders who were promised that no penalty would be imposed on them; nor can it justify the conscious use of the penalty to coerce customers into renewing their policies."

[6] We express no opinion as to the propriety of Employers' treatment of Leonetti's policy as one expiring on July 31, 1974. If such treatment is warranted under the terms of the policy then the resolution amending the dividend distribution plan might have been valid as to Leonetti under the provision of the policy which provided that dividends would be distributed in accordance with the plan in effect at the time of expiration. This does not, obviously, deal with the issue of the promise that no penalty would be imposed for cancellation.

Although the order does not address this particular issue, the hearings officer seemed to be particularly incensed that Employers would adopt an assumed loss ratio provision after the policy was cancelled. As noted above, however, breach of contract is not at issue here.

The Commissioner's opinion contains one further paragraph which might be considered explanatory:

" * * * Employers' use of an assumed loss ratio constitutes unfair dividend discrimination because not all policyholders are treated the same. Employers' attempts to justify the use of this penalty against non-renewing or cancelling policyholders by characterizing it as a 'hedge' against losses which might later develop. Actually, the need for this 'hedge' results from Employers' negligence in inadequately formulating contingency projections for use in their dividend calculations. The penalty for this inaccurate projection is borne only by the cancelling and non-renewing policyholders. While the renewing policyholders' dividends will reflect the actual losses, as ultimately determined, the cancelling policyholders will suffer an 'assumed' loss of 50%. The result is that policyholders of essentially the same degree of risk are treated differently, and this practice amounts to unfair discrimination."

However, this is, again, a further explanation of what Employers did along with the *conclusion* that those actions constituted unfair discrimination. What the hearings officer fails to do is to explain why this amounts to unfair discrimination. As the Supreme Court noted in *Thompson v. IDS Life Ins. Co.,* 274 Or 649, 654, 549 P2d 510 (1976), " * * * insurance, to some extent, always involves discrimination, to a large degree based on statistical differences and actuarial tables. The legislature specifically intended, in enacting ORS 746.015 * * *, to prohibit *unfair* discrimination in the sale of insurance policies."

Employers' contention is that it sought to apply the assumed loss ratio to non-renewing and cancelling policyholders because the loss ratio of renewing policyholders in subsequent years would reflect losses which came in after the expiration of previous policies and their dividends in subsequent years would be according lower, tending to balance out the dividends over time, whereas cancelling or non-renewing policyholders' dividends would not be balanced out over time and they would receive more dividends than they should have been entitled to. The Commissioner explains that reasoning and apparently concludes that it is invalid. He suggests that a more accurate calculation of dividends could have been made which would include a factor accounting for the possibility of later reported losses.

That may be. It does not, however, necessarily lead to the conclusion that the imposition of an assumed loss ratio is *unfair* discrimination.

Without the benefit of an explanation of the reasoning which led the Insurance Division to conclude that the discrimination which Employers made between renewing policyholders and those who cancelled or failed to renew was unfair, we cannot review its order. *McCann v. OLCC, supra; Home Plate, Inc. v. OLCC, supra.* We therefore remand that portion of the order finding unfair discrimination by giving unequal dividends for entry of an order which provides that explanation.

## MISREPRESENTATION

The second violation which Employers was found to have committed involved a policy of workers' compensation insurance sold to B & D Paving Company (B & D). The policy was effective from July 1, 1973 to July 1, 1974. It was also a participating policy which provided for dividends to be determined on a sliding scale. In June, 1974, when Employers' sales agents approached B & D about renewal, they informed B & D that the assumed loss ratio would be applied in determining its dividends if it did not renew its coverage. B & D had not been informed of the possible application of the assumed loss ratio when it purchased the policy because that provision was not in effect in July, 1973.

The amendment to the dividend distribution plan which allowed application of the assumed loss ratio to dividend plan B, under which B & D was covered, was enacted by Employers' Board of Directors on July 24, 1974.[7] Apparently, however, it was anticipated and the sales agents were informed of the change before its enactment. The agent who dealt with B & D regarding renewal of its policy understood that it was to be used as leverage to secure renewals. He attempted to use that leverage in securing renewal of B & D's policy.

---

[7] The findings of fact designate the date of the resolution as July 24, 1974, although the exhibit indicates that the date was July 26, 1974. The difference is not significant for our purposes.

Employers was found by the Division to have misrepresented the terms of a policy issued. Such misrepresentation is prohibited in ORS 746.075(1):

"In the offer or sale of any insurance, directly or indirectly, * * * no person shall:

"(1) Make, issue, circulate or cause to be made, issued or circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages therein or the dividends or share of surplus to be received thereon."

The policy issued to B & D contained the same provisions regarding dividends as did the Leonetti policy, including the provision in a premium refund endorsement that dividends would be determined under the refund schedule "in effect and applicable to the policy at the time of expiration * * *."

The Commissioner found that Employers falsely informed B & D that it would not be entitled to a full refund if it did not renew. Employers argues that there was no misrepresentation in the sale of the policy in 1973 because there was no assumed loss ratio in effect at that time. It contends that there was no misrepresentation in attempting to secure the renewal of the policy in 1974 because it was true at that time that an assumed loss ratio would be applied if B & D failed to renew.

Although the Commissioner does not explain it in this way, the problem with Employers' analysis is the fact that the provision allowing application of an assumed loss ratio under the dividend plan applicable to B & D was not established until late July, 1974. B & D's policy expired on July 1, 1974. The policy required that dividends be computed according to the plan in effect at the time the policy expired. Under the terms of the policy, it appears that the assumed loss ratio would not have been applicable to B & D even if B & D did not renew.

Employers' application of an assumed loss ratio would, then, be a breach of its contract with B & D. The announcement of an intended breach of contract would not ordinarily be considered misrepresentation. However, we hold that, under the facts here, the Commissioner could have found misrepresentation.

First, we note that the statute prohibits any " * * * statement misrepresenting the terms of any policy *issued* or to be issued * * *." Employers' actions come literally under this statutory language. Additionally, it is important to recognize that this type of insurance policy is often complex, and that the premium refund, or dividend, provisions were not entirely determined before the policy was issued, but rather were those in effect at the expiration of the policy. The policy provided that the insured would participate in distribution of dividends " * * * to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law * * *." In fact, under the policy there was no assurance that dividends would be distributed at all.

■■    We hold that the statute may be interpreted as applying to the kind of statements made by Employers' agent in attempting to induce B & D to renew its insurance coverage. Because we find that the statute *may* be interpreted to include such actions, we defer to the Commissioner's determination that such an interpretation is appropriate here. The Commissioner has been given the authority and the discretion to determine whether actions by insurers constitute misrepresentation. We will not disturb that finding if it is within the range of the responsibility delegated to the him. *McPherson v. Employment Division, supra.* The determination here is within that range. We affirm the portion of the order finding that Employers misrepresented the terms of a policy issued in attempting to induce B & D to renew its insurance coverage.

Affirmed in part, reversed and remanded in part.