Argued and submitted April 22,
reversed and remanded July 13, 1981

McCANN,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(No. 80-AB-1294, CA 19838)

630 P2d 1335

Kathryn E. Tassinari, Eugene, argued the cause for petitioner. With her on the brief were Roberta J. Lindberg and Lane County Legal Aid Service, Eugene.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondents Employment Division and Raymond P. Thorne, administrator. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

No appearance by respondent Springfield School District #19.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Petitioner appeals from an order of the Employment Division Board denying her unemployment compensation benefits on the grounds that she was not available for work, ORS 657.155 (1)(c), and had refused an offer of suitable work. ORS 657.176 (2)(e). We reverse and remand.

Petitioner had worked for five years as a teacher's aide for the Springfield School District, but lost her job when funds were cut. She continued to seek work of the same type, primarily with the same employer. In August, 1980, the principal of Camp Creek School called and told petitioner that a position was open as a library aide which would be 5 to 5-1/2 hours per day, three days a week at that school and two days at Brattain School and invited petitioner to come in for an interview. The former school is located some distance from petitioner's house and would require her, since she does not own a car or even know how to drive (although she has no restrictions which would prevent her learning), to catch a bus eight blocks from her home at 5 a.m., ride it about five miles[1] to Walterville and walk an additional five miles to the school. The return trip would get her home about 5:15. She testified she did not investigate carpooling because the hours she would be working were different from those of the regular staff. On the basis of this discussion, petitioner declined to go to Camp Creek School for an interview.

The referee found basically the above facts and also that the labor market in which petitioner resides includes Camp Creek School. She found petitioner unavailable for work but reversed the administrative determination that petitioner had refused an offer of suitable work because it did not appear that a firm offer was made. Petitioner filed a request for review to the Board on the issue of availability for work. The Board affirmed the referee on this point and, on its own motion (there being no formal request for a Board determination on the point), it reversed the referee and held that petitioner had refused an offer of suitable employment.

---

[1] Petitioner corrected her testimony before the referee by letter to the Board to the effect that the school was in fact 16-1/2 miles from her house.

"* * * The claimant was asked to appear for a job interview for employment which coincided with her earlier job experience. In fact, two days of the week she would have been employed at the school where she previously worked. Although she was only asked to report for an interview and a firm offer of employment was not made, the claimant precluded the employer from offering her work because of her failure to report for the interview. This is tantamount to a refusal of suitable work considering the claimant's prior employment for this employer. The claimant has not shown that a reasonable and prudent person, exercising ordinary common sense, would act in this manner by refusing the job interview (see OAR 471-30-038)."

In *Oliver v. Emp. Div.,* 40 Or App 487, 595 P2d 1252 (1979), which involved the refusal of a handicapped person to look for work in communities more than five miles from his home because he was dependent upon his parents for transportation, we held that, under *McPherson v. Emp. Div.,* 285 Or 541, 591 P2d 1381 (1979), the term "labor market" was initially for agency, not judicial, definition and, because the term was nowhere defined by rule and was being applied on an *ad hoc* basis by various local offices of the Division, we remanded for promulgation of a rule on the subject. We stated:

"From these various approaches, we note that the concept 'labor market,' on the facts of this case, presents a significant policy question: is it to be defined situationally, based on the circumstances of an individual claimant, or is it to be defined the same for all potential claimants in a given area regardless of their individual circumstances? Other eligibility standards have been defined situationally. Generally a claimant need only be seeking 'the type of work the individual is most capable of performing due to prior job experience and training.' OAR 471-30-036(1). The various decisionmakers in this case supplied their own individual answers to whether 'labor market' should likewise be defined situationally. The local office, referee and Board majority said 'no.' The Board dissenter said 'yes.'

" 'An administrative agency cannot properly perform its duty under the law unless employees at all levels work toward the same objectives under a clear direction of policy from the head of that agency.' *Sun Ray Dairy v. OLCC, supra* 16 Or App at 71-72. Under *McPherson* it is not for us to resolve the policy involved in defining a labor market;

nor is it for the Employment Appeals Board; nor is it for the referee. Instead, that responsibility rests with the Employment Division. 285 Or at 546-47, 551. It is understandable, but impermissible, for those that do not have policymaking authority to fill the policy void with their own ideas of what policy should be. That need not occur if Employment Division policy is promulgated in rule form.

"We also require that the rules adopted contain reasonable specificity. We do not require that the Employment Division be sufficiently prophetic to foresee every possible policy question that can arise in all unemployment compensation cases and supply an answer by rule; unique situations will create unusual questions that necessarily will have to be resolved on a case-by-case basis. But there is nothing unique or unusual about the concept 'labor market.' It is central to the rules stated in OAR 471-30-036 and conceivably could be germane to each and every unemployment compensation claim." (Footnote omitted.)

In response to *Oliver,* the Division adopted the following rule:

"(4) An individual's labor market shall be that geographic area surrounding his permanent residence within which employers *customarily* obtain employes performing similar work or services as those provided by claimant and within which employes *generally* under similar circumstances are willing to commute to seek and accept the same type of work at a comparable wage. *The geographic area shall be defined by local employes of the Employment Division based on criteria set forth in this section."* OAR 471-30-036(4). (Emphasis added.)

Broken down, the rule sets forth several criteria, both subjective and objective, for local application. The location of a claimant's permanent residence must be determined as well as the type of "work or services" she is capable of performing. Thereafter, consideration must be given to whether employers of people with the claimant's skills "customarily" obtain employes from the area in which she permanently resides and how far others, similarly situated, are "generally" willing to commute to obtain that type of work at a comparable wage.

■ ■ There is no substantial evidence in the record to support the referee's and Board's determination that Camp Creek School was within petitioner's labor market. Petitioner's residence was established, and there does not seem

to be any dispute that the position would have involved work similar to her past experience. There was no evidence, however, of where employes of Camp Creek School, particularly in the same wage classification, live and commute from. We noted in *Oliver* that we have doubts whether a labor market is an appropriate subject for administrative notice. 40 Or App at 500. We now hold it is not.

For this reason, we reverse and remand this case to the Board. Petitioner contends that the defect in the determination cannot be cured on remand because the rule (OAR 471-30-036(4)) contemplates that local employes of the Division will "define" the labor market applicable to residents within its jurisdiction (presumably by rule, although petitioner does not expressly argue as much). In support of this contention, she cites *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980), and *Ortiz v. Adult and Family Services Division,* 45 Or App 925, 609 P2d 1309 (1980). In *Megdal,* our Supreme Court held that the Board had primary responsibility for defining the term "unprofessional conduct" and, since it had not done so prior to revoking a practitioner's license for misrepresenting to his malpractice insurer that dentists employed by him worked in Oregon (when in fact they worked in California), the court held that the defect in the revocation could not be cured because any rule the agency would adopt would amount to *post hoc* policy making as applied to the practitioner. A similar result obtained in *Ortiz,* where the agency sought to suspend benefits to the petitioner for refusing employment without "good cause," and that term had not been previously elucidated by agency rule-making.

■■    Here, the agency has acted and set forth its criteria for determining the labor market area. Under these criteria, it is impossible to draw lines on a map to represent the geographical boundaries of a labor market applicable to all workers in that area. The determination will vary with the location of a claimant's residence and with the type of work she is seeking. It will further vary with the employer's location, where it draws its work force from and whether the compensation it pays is attractive enough to prompt people to commute from distances similar to that claimant would be required to travel. As stated in *Oliver v. Emp. Div., supra,* 40 Or App at 493, the prohibition is

against an agency proceeding on a *purely ad hoc* basis in applying a term which the legislation has left to the agency to define. *Marbet v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977). We conclude the rule adopted is sufficient to focus attention on the relevant criteria and is consistent with the underlying policies of the act. *Springfield Education Ass'n v. School Dist.,* 290 Or 217, 227-28, 621 P2d 547 (1981); ORS 183.400(4)(b).[2] On remand, further evidence should be taken under the criteria set out in the rule.

Petitioner also assigns error to the Board's *sua sponte* declaration that she had failed to accept an offer of suitable employment. Her principal argument is that, under the statute, the Board only has jurisdiction to rule on those issues presented to it for review and, since petitioner appealed only on the issue of availability for work and the Division made no argument that the referee was wrong in the determination of the offer of suitable work point, the Board erred in raising and deciding the matter. Because we have determined that the labor market area in this case has not been established, we need not decide this point.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

[2] Petitioner's main contention on appeal is that the school is outside her labor market because she cannot reach it by a combination of public transportation and foot travel. As we have stated, the definition of labor market is a matter for agency discretion. Although it is clearly proper for the agency to consider the availability of public transportation in delimiting the boundaries of a particular labor market, it is not required to set that availability up as a determinative factor. It has chosen not to do so here; it has, however, incorporated it as a consideration since the availability of such transportation is likely to affect the number of people who are willing to commute to a particular location.