STATE, Respondent, vs. JOSEFSBERG, Appellant.

*February 4—March 5, 1957.*

For the appellant there was a brief by *Backus & Waters,* attorneys, and *Douglas J. McClelland* of counsel, all of Milwaukee, and oral argument by *Mr. McClelland.*

For the respondent there was a brief by the *Attorney General* and *Robert J. Vergeront,* assistant attorney general, attorneys, and *Martin J. Werra* of Madison of counsel, and oral argument by *Mr. Vergeront.*

STEINLE, J.   No bill of exceptions was settled. The case is before this court upon the record. The findings are complete and in detail, and cover all issues raised by the pleadings. The findings stand as verities in this court. *Davis v. Davis* (1951), 259 Wis. 1, 47 N. W. (2d) 338. We are limited to a consideration as to whether the pleadings and the findings sustain the judgment. *Town of Madison v. City of Madison* (1955), 269 Wis. 609, 70 N. W. (2d) 249.

In so far as material, the pleadings set forth allegations as follows: The complaint in substance alleges that the defendant is a resident of Milwaukee county; that upon his third attempt to become licensed as a practitioner of medicine and surgery in this state, a license to so practice was issued to him on June 30, 1927, by the board; that annual certificates of registration were issued to him for the years 1945 through 1952; that since 1925 and continuously thereafter to the date of the commencement of this action, ch. 147, Stats., was in effect; that said enactment related to requirements for license to practice medicine and surgery, and made it an absolute condition precedent to the issuance of such license that the applicant be a *bona fide* graduate of a professional school or college, and hold a diploma duly issued by such school; that in order to induce the board to issue the license and each of the annual registrations to him, the defendant fraudulently and with intent to deceive represented to the board in his application that he was a graduate of the Medical School of the University of Vienna, Austria, and that he had

received the degree of Doctor of Medicine from said school, and that he held a diploma evidencing such degree and his graduation from that school; that in fact the defendant never attended, nor graduated, nor received a diploma from said school; that the document which he exhibited to the board and which was relied upon by that body when it issued the license and the annual certificates, was spurious and a forgery; that the defendant left and did not return to the jurisdiction of the courts of this state until 1945; that he has been practicing medicine in Milwaukee since 1945.

In his answer the defendant denied that he had made the false or fraudulent representations to the board as charged in the complaint. He asserted that he was a graduate of the Medical School of the University of Vienna, and that he had received a degree of Doctor of Medicine from said school, and that a diploma evidencing such degree and graduation was issued to him. While admitting that he was away from this state during the period from 1928 to 1945, he asserted that such factor did not toll the statute of limitation against him in his proceeding; that this action is barred by sec. 330.19 (7), Stats. (six-year statute of limitations relating to an action for relief on the ground of fraud). He alleged further that in 1928 the American Medical Association's "Register of Physicians," a semiofficial record relied upon by various boards of medical examiners including that of Wisconsin, contained an announcement to the effect that said association's information did not substantiate fully the defendant's graduation; that the Wisconsin board of medical examiners was or should have been aware of such notice, and ought to have made a timely investigation to ascertain whether fraud had been perpetrated by the defendant when procuring the license in this state. He further averred that since the Wisconsin board had certified his credentials to the boards in Missouri and Illinois after 1928, and that since twenty-four years had elapsed from the time when this

state ought to have instituted proceedings against him on information in its possession or available to it, the plaintiff is guilty of laches in not having pursued its remedies within a reasonable time. In support of his defense of laches, the defendant specifically alleged that: "(a) That he is of Jewish faith by birth and left Austria in 1925 because his activity in resisting anti-Semitism had brought him to the attention of certain cells of the National Socialist movement, (b) that in the year of 1939 the German army, under the domination of the Nazi party, entered Austria and effected the so-called 'Anschluss' and thereupon and thereafter were in complete control of all military and civil institutions including the University of Vienna, its Medical School and its records, (c) that defendant [he] is creditably informed and believes that administrators of the extreme Nazi persuasion and dedicated to a campaign of violent anti-Semitism were in control of the university and all of its records from 1939 until termination of the war in 1945, (d) that thereafter what records remained that were not destroyed were tampered, irregular, and incomplete, (e) that nevertheless the Wisconsin board of medical examiners, as the agent of the state of Wisconsin, failed after the termination of the war to make any further investigation until this proceeding was initiated."

In the answer, the defendant also asserted that in 1945 he submitted to the Wisconsin board of medical examiners verified statements from Dr. Karl Beck, professor of the Medical School of the University of Illinois, and Dr. Seth Hirsch, professor in the Medical School of Columbia University, both of whom were postgraduate students at the hospital of the University of Vienna and who had personal knowledge of the graduation of the defendant, which original documents were left in the possession of the Wisconsin state board of medical examiners; that both of said professors are now

deceased, and the defendant is unable to obtain additional comparable proof.

In its findings of fact the trial court determined that the defendant resides in Milwaukee county and practices medicine and surgery there. He applied to the board for a license to practice medicine and surgery, and that a license for such purpose was issued to him on June 20, 1927. Annual certificates of registration were issued to him by the board each year from 1945 through 1952. In connection with his application for such license, the defendant falsely and fraudulently represented to the board that he was a graduate of and held the degree of Doctor of Medicine from the Medical School of the University of Vienna, and that he presented and exhibited to the board at the time, a document purporting to be a medical diploma from said school dated October 27, 1919. He had actually completed only six of the 10 semesters of medical study required for graduation at the Medical School of the University of Vienna. On October 27, 1919, he was a fourth-semester undergraduate medical student at that university, and did not graduate there on October 27, 1919, or at any other time. The diploma purportedly issued to the defendant by the Medical School of the University of Vienna bearing date of October 27, 1919, which was presented to the board in support of his application for the license, was a forged document. The defendant left this state in midyear 1928 and established a residence outside the state. He returned to this state in 1945. He procured his license and the annual certificates of registration by fraud.

The defendant contends (1) that the action is barred by the statutes of limitation, or (2) that the state is barred by laches from revoking the license and annulling the certificates of registration. The plaintiff maintains that no statute of limitations applies to an action to revoke a physician's license or, in the alternative, that if any limitation statute applies,

it is the ten-year statute, which however, was tolled during the absence of the defendant from this state, and had not run in his favor when the action was commenced. The plaintiff also submits that the defense of laches does not apply to a situation in which the license was obtained by fraud.

In *State v. Schaeffer* (1906), 129 Wis. 459, 109 N. W. 522, this court determined that the civil action brought by the state to revoke a certificate of registration issued by its board of medical examiners to the defendant on the basis of his fraudulent representations, was not barred by any general statute of limitation. Sec. 4229, Stats. 1905, was in effect when that action was commenced. It read in part:

"ACTIONS BY STATE. A civil action to recover a penalty or forfeiture accruing wholly or in part to the state must be commenced within six years after the cause of action therefor has accrued.

"Any action or proceeding begun by the attorney general under the provisions of section 1214 of the statutes of 1898, as amended by chapter 315 of the Laws of 1903, for the forfeiture of the rights, privileges, and franchises of any railroad company or any person or persons operating a railroad within this state must be commenced within six years after such action or proceeding accrued.

"Any other action in favor of the state, whether created by statute or otherwise, must be commenced within ten years after the cause of action therefor has accrued.

"No cause of action in favor of the state for relief on the ground of fraud, whether in equity or at law, shall be deemed to have accrued until the discovery on the part of the state of the facts constituting the fraud."

It is to be noted that in *State v. Schaeffer, supra,* counsel for the state argued that the ten-year statute of limitation applied. Notwithstanding the statute and the position of the state in the cause, Mr. Chief Justice CASSODAY, speaking for the court, said (p. 467) :

"In the case at bar defendant received the certificate of registration from the board on the supposition that he was a graduate from each of the institutions mentioned, and so, of course, was possessed of the requisite learning, skill, ability, and character to practice medicine or surgery. That certificate gave to the defendant the special privilege of practicing such profession, and he is still enjoying such privilege. The complaint now is that he procured such certificate by fraud, perjury, and misrepresentation, and hence that the same should be revoked and annulled in order to protect the public from incompetency and unfitness. The question involved concerns not only the defendant but also the public, and in the interest of all should be tried and determined by an impartial tribunal.

"As indicated, this is not an action to enforce a penalty or forfeiture, but a civil action to set aside a certificate of registration for the reasons stated. We perceive no ground for the claim that the action is barred by the two years' statute of limitation, or the three years' statute of limitation, *or any other statute of limitation.*" (Emphasis supplied.)

Sec. 330.28, Stats. 1927, in part provided:

"A civil action to recover a penalty or forfeiture accruing wholly or in part to the state must be commenced within six years after the cause of action therefor has accrued. Any forfeiture action or proceeding begun by the attorney general under the provisions of section 76.04 must be commenced within six years after such action or proceeding accrued. Any other action in favor of the state, whether created by statute or otherwise, must be commenced within ten years after the cause of actions therefor has accrued. No cause of action in favor of the state for relief on the ground of fraud, whether in equity or at law, shall be deemed to have accrued until the discovery on the part of the state of the facts constituting the fraud."

In 1931, sec. 330.28, Stats. 1927, was repealed and sec. 330.18 was enacted. Sec. 330.18 was in existence when the instant action was begun. It reads in part:

"Within ten years: (6) Any action in favor of the state when no other limitation is prescribed in this chapter. No cause of action in favor of the state for relief on the ground of fraud shall be deemed to have accrued until discovery on the part of the state of the facts constituting the fraud."

Sec. 330.19, Stats., which was in effect when this action was brought, reads in part:

"Within six years: (7) An action for relief on the ground of fraud. The cause of action in such case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."

For purposes under consideration there is no substantial distinction between the general statutes of limitation (as herein set forth), which were in effect when the instant action was commenced, and the general limitation statute which was effective when *State v. Schaeffer* was decided. There is no special provision in the statutes barring actions of this nature within any prescribed time. We are aware of no valid reason for departing from the principle enunciated in *State v. Schaeffer* to the effect that the general statutes of limitation do not apply to actions brought for the revocation of a physician's license procured through fraud.

In overruling the demurrer, Hon. OTTO H. BREIDENBACH determined that if any statute of limitation applied to the instant situation, it was the ten-year statute as provided in sec. 330.18, Stats. Judge BREIDENBACH was of the view that since the defendant had been absent from the state from 1928 until 1945, the statute was tolled during such period of absence under sec. 330.30, which treats with limitation when a person is out of the state. In the trial of the action upon its merits, Judge SWIETLIK determined that the general statutes of limitation were not applicable to an action of this kind. We concur in such view. At 34 Am. Jur., Limitation of Actions, p. 307, sec. 393, it is said: "The general principles

as to the immunity of the Sovereign from laches and statutes of limitation, which arose in England, have been applied in reference to the states of the American Union. Unless the statute provides to the contrary, . . . statutes of limitation do not apply to a state when suing in its sovereign capacity." At 53 C. J. S., Limitations of Actions, p. 940, sec. 15, 1, it is said that "Unless it is expressly or by necessary implication provided otherwise, statutes of limitation do not run against the United States or a state in its sovereign or governmental capacity and in respect of public rights." In the instant matter the state has brought the action in its sovereign capacity and for the interest of the public. It has been held that in asserting rights vested in it as a sovereign government, a state is not bound by general statutes of limitation unless the legislature has clearly manifested its intention that the state be so bound. See *United States v. Nashville, C. & St. L. R. Co.* (1886), 118 U. S. 120, 6 Sup. Ct. 1006, 30 L. Ed. 81; *United States v. Bartron* (D. C. 1929), 35 Fed. (2d) 765; *United States v. Miller* (8th Cir. 1928), 28 Fed. (2d) 846, 61 A. L. R. 405. It is considered that the statutes of limitation which were in effect when this action was commenced, are not applicable here for the reason that the same do not manifest a legislative intention that the state be so bound.

The defendant's contentions that the state is barred by laches from revoking the license and annulling the certificates of registration, is predicated upon the claim that the board failed to take timely action in commencing its proceeding for revocation after having had notice in 1927 of the questionability of the defendant's credentials. The defendant submits that the board made its own inquiry to determine his status; that it apparently was satisfied with his credentials; that he passed the board's examination; that his credentials were certified by the board to the authorities in Missouri and Illinois, that in 1945 he requested the board to clarify his

position as a physician, and after a hearing, the board permitted him to continue in the practice. He argues that had a license been denied to him in 1927, or had the license been timely revoked thereafter, he could then have transferred his six semesters of credit (found by the court to have been acquired at the University of Vienna) to a medical school in this country, where he may well have completed the required schooling to enable him to satisfy the state as to matters of graduation and adequate credentials. Undue hardship is claimed by the defendant because of his inability to have presented at the trial the testimony of three doctors who were acquainted with his status, and who have died since 1927. He points out that twenty-six years elapsed between the time of the issuance of his license and the commencement of this action; that witnesses had died, moved, or were otherwise lost track of; that chaotic events in Europe during the period 1939–1945 adversely affected his chances of tracing witnesses, documents, and facts to support his position. He maintains that in view of the fact that he had satisfactorily passed the board's examination before a license was issued to him, the public was adequately protected in relation to his functioning as a practitioner of medicine, and that the permission extended to him by the board in 1945 to continue in the practice, clearly indicates that the board was not of a mind that the public was endangered by virtue of his practice, or that medical ethics were being violated by him.

In ruling that the doctrine of laches was not applicable to the situation, the trial court noted that while the board in 1927 referred the matter of the defendant's credentials to the American Medical Association, and while that association in turn communicated with the University of Vienna, it does not appear of record that said association advised the board of the result of its inquiry. The defendant left Wisconsin in 1928 and did not return until 1945. The trial court observed that the board took no action in 1945 to revoke

the defendant's license for the reason, undoubtedly, that the evidence then before it did not justify the commencement of proceedings. The court's decision, however, was based on the principle that laches on the part of the government in bringing suit is not to be a defense in the case of a claim which is founded on a sovereign right. The court held that in this instance the state was acting in its sovereign capacity for the protection of the public, and that in a matter of this kind no omission of duty on the part of its officers or agents is imputed to the state. We are constrained to conclude that such determination was correct.

In support of his contention that the doctrine of laches is applicable to a situation of this kind, the defendant relies on *Schireson v. Shafer* (1946), 354 Pa. 458, 47 Atl. (2d) 665, and *Pennsylvania State Board v. Schireson* (1948), 360 Pa. 129, 61 Atl. (2d) 343. True, those cases recognize that laches may apply to actions brought for the revocation of physicians' licenses obtained through fraud. In *Schireson v. Shafer* it was said that laches is not to be imputed by the mere passage of time, but must be determined after all of the circumstances of the case are developed. However, in *Eclectic State Medical Board v. Beatty* (1941), 203 Ark. 294, 156 S. W. (2d) 246, the court held that the doctrine of laches was not applicable to a situation in which the license was obtained through fraud. There, a physician sought to enjoin the medical-licensing board from conducting a hearing on a complaint to determine whether the license of the physician should be revoked on the ground that he falsely represented that he attended a certain medical college, and that his diploma was illegally and fraudulently obtained; and that his license had been obtained by fraud and deception. The physician partly grounded his action on alleged laches on the part of the board. The court said (p. 299) :

"The appellee further contends that even if the law under which this proceeding was invoked is not void for un-

certainty, but is valid, and even if we should hold that the charges in the complaint to revoke his license were sufficiently definite and constituted grounds, for revoking his license, still this case should be affirmed for the reason that the appellant is estopped by laches, by waiting nine or ten years to start proceedings to revoke his license on grounds which, if they existed at all, existed at the time he was licensed.

"We cannot agree with the appellee in this contention. A part of the allegations of the complaint against the appellee seeking to revoke his license was that his diploma was illegally and fraudulently obtained, and also that the license or certificate which was issued to him by the Arkansas board was obtained by fraud and deception. Since it is claimed that the appellee was guilty of fraud not only in obtaining his diploma, but also in obtaining his license to practice in the state of Arkansas, we think that the appellant would have the right to proceed after the fraud, if any, had been discovered.

"In the case of *State Board of Health v. Roy,* 22 R. I. 538, 48 Atl. 802, [803], the court held that where one obtains a license from a state medical board by false or fraudulent representations, this is a continuing offense. Every time such person undertakes to practice under his license he keeps up and continues the fraud initiated when he obtained by false representations his pretended authority to practice.

"In the case of *Cunningham v. State,* [Tex. Civ. App.], 79 S. W. (2d) 180, [181], the court said: 'The question was whether it (the license) had been fraudulently obtained, and the allegation that it was obtained by a series of fraudulent acts, continuing from the present time back to the original act, was sufficient. A privilege such as this, conceived in fraud and procured by fraud, cannot be raised, by continued fraudulent devices, to the dignity of a vested right, and the state may properly invoke the aid of the courts in withdrawing the privilege at any time the fraud is uncovered.' "

At 30 C. J. S., Equity, p. 526, sec. 114, it is said:

"The doctrine of laches cannot be applied against public rights. While the contrary has been held, by the weight of

authority the defense of laches is not available against the government, state or national, in a suit by it to enforce a public right or to protect a public interest, or, as the rule is sometimes expressed, the laches of its officers or agents will not be imputed to the government. This rule applies, however, only to suits brought by the government in its sovereign capacity to enforce or to protect a public or governmental right; if it sues for the use and benefit of an individual, or for the· enforcement or the protection of a private and proprietary right rather than a public or governmental right, laches is pleadable against it the same as against an individual."

In 19 Am. Jur., Equity, p. 342, sec. 495, it is declared that:

"Laches on the part of the government in bringing suit is said not to be a defense in the case of a claim which is founded on sovereign right. It is also observed that the laches of the officers of the government cannot be set up as a defense to a claim which is made by the government."

Since this action was brought by the state in its sovereign capacity to protect a public right, we are constrained to hold that the doctrine of laches was not applicable to the situation litigated therein.

The judgment of the trial court is sustained by the pleadings and the findings.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J., took no part.