Lee R. Krahenbuhl, DDS, Plaintiff-Appellant,

v.

Wisconsin Dentistry Examining Board,
Defendant-Respondent.

Court of Appeals

*No. 03–2864. Submitted on briefs May 5, 2004.—Decided
June 30, 2004.*

2004 WI App 147

(Also reported in 685 N.W.2d 591.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Raymond M. Roder*, of *Reinhart, Boerner, Van Deuren, S.C.* of Madison, and *Charles J. Hertel*, of *Dempsey, Williamson, Lampe, Young, Kelly & Hertel*, of Oshkosh.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Robert M. Hunter*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Lee R. Krahenbuhl, DDS, appeals from a trial court order upholding a decision of the Wisconsin Dentistry Examining Board (DEB) to suspend and impose conditions on Krahenbuhl's dentistry license based on a violation of the professional conduct requirements set forth in WIS. STAT. § 447.07(3)(a) and (h) (2001–02)[1] and WIS. ADMIN. CODE § DE 5.02(5). Krahenbuhl contends that the disciplinary action, brought more than six years after the patient treatment that is at issue in this case, is barred by the six-year statute of limitations set forth in WIS. STAT. § 893.93(1)(a). Krahenbuhl additionally contends that his due process rights were violated when the DEB improperly acted as its own expert witness and improperly shifted its burden of proof to Krahenbuhl.

¶ 2. We conclude that the six-year statute of limitations set forth in WIS. STAT. § 893.93(1)(a) does not apply to a disciplinary proceeding, the focus of which is to monitor and supervise the performance of a person

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

who has been granted the privilege of a license in this state. We further conclude that Krahenbuhl's due process arguments are essentially a challenge to the sufficiency of the evidence, one that fails in this case. The DEB was presented with substantial evidence to support its finding that Krahenbuhl's treatment constituted a violation of professional standards.

### *APPLICABLE LAW*

¶ 3. Krahenbuhl was disciplined on grounds that he engaged in unprofessional conduct contrary to Wis. Stat. § 447.07(3)(a) and (h) and Wis. Admin. Code § DE 5.02(5). Wisconsin Stat. ch. 447 governs the DEB; § 447.07 governs the disciplinary proceedings of the DEB. Krahenbuhl's violations pertain to the following provisions of § 447.07:

> **(3)** Subject to the rules promulgated under s. 440.03(1), the examining board may make investigations and conduct hearings in regard to any alleged action of any dentist or dental hygienist, or of any other person it has reason to believe is engaged in or has engaged in the practice of dentistry or dental hygiene in this state, and may, on its own motion, or upon complaint in writing, reprimand any dentist or dental hygienist who is licensed or certified under this chapter or deny, limit, suspend or revoke his or her license or certificate if it finds that the dentist or dental hygienist has done any of the following:
>
> (a) Engaged in unprofessional conduct.
>
> . . . .
>
> (h) Engaged in conduct that indicates a lack of knowledge of, an inability to apply or the negligent application of, principles or skills of dentistry or dental hygiene.

WISCONSIN ADMIN. CODE § DE 5.02(5) provides that "[u]nprofessional conduct by a dentist . . . includes . . . [p]racticing in a manner which substantially departs from the standard of care ordinarily exercised by a dentist or dental hygienist which harms or could have harmed a patient."

¶ 4. The statute of limitations at issue on appeal is set forth in WIS. STAT. § 893.93(1)(a) which governs miscellaneous actions. It provides:

**(1)** The following actions shall be commenced within 6 years after the cause of action accrues or be barred:

(a) An action upon a liability created by statute when a different limitation is not prescribed by law.

### *BACKGROUND*

¶ 5. The dental procedure giving rise to the disciplinary proceedings in this case was performed on a fifteen-year-old patient, Michael Mosher, in 1994. On November 29, 1996, Mosher's mother filed a complaint with the Department of Regulation and Licensing stating concerns regarding a root canal that Krahenbuhl had performed on her son. On September 27, 2000, the Division of Enforcement filed, on behalf of the DEB, a complaint against Krahenbuhl alleging the following: On July 5 and 11, 1994, Krahenbuhl performed root canal therapy on Mosher's tooth 18. On April 29, 1996, Mosher visited a subsequent treating dentist, John LeMaster, with complaints of pain localized to tooth 18. The complaint alleged that x-rays taken by LeMaster showed inadequate filling of the distal canal of tooth 18, decay of the tooth at the top of the distal canal, and extension of the filling placed in the canal by more than five millimeters past the end of the distal root.

¶ 6. During the course of the investigation, Krahenbuhl provided the DEB with x-rays, which he represented were taken on July 5 and 11, 1994. The Division's complaint alleges that the x-ray represented to have been taken on July 11, 1994, following Krahenbuhl's filling of Mosher's root canal, could not have been taken on that date because it depicted a radio-opaque area at the top of the tooth which is of an irregular shape and approximately twice as large as the radio-opaque area on the July 5, 1994 x-ray. The x-ray taken by LeMaster on April 29, 1996, depicts a radio-opaque area at the top of the tooth which is of the same size as that depicted in the July 5, 1994 x-ray. LeMaster's x-ray also depicted an overfill of the distal canal of Mosher's tooth 18. Therefore, the Division's complaint alleged that Krahenbuhl falsely represented that an x-ray was taken post-treatment on July 11, 1994, and reflected a permanent crown installed between July 5 and 11, 1994.

¶ 7. The Division alleged that a minimally competent dentist will take a post-treatment x-ray of endodontic treatment "to check that the canals are . . . not overfilled through the apical end of the tooth" and that a minimally competent dentist who sees that endodontic treatment has overfilled a canal will take immediate steps to rectify the overfill. Failure to correct an overfill presents an unacceptable risk to the patient of infection, pain and loss of the tooth.

¶ 8. Krahenbuhl filed an answer to the Division's complaint on October 16, 2000, and followed with a motion on February 20, 2001, seeking to dismiss the complaint as barred by the six-year statute of limitations set forth in WIS. STAT. § 893.93(1)(a).[2] The Divi-

---

[2] Krahenbuhl additionally argued that the action was barred under the doctrine of laches and the Medical Practice Act, WIS. STAT. § 448.02. Krahenbuhl does not renew these arguments on appeal.

sion opposed Krahenbuhl's motion. The Administrative Law Judge (ALJ), William Black, denied Krahenbuhl's motion on March 15, 2001, stating that Krahenbuhl "failed to present a sufficient basis in either the law or the facts . . . upon which to base a dismissal of the present complaint on the legal theory of laches or any applicable statute of limitations."

¶ 9. A contested hearing was held before ALJ Black on April 12, 2001. The Division presented the videotaped testimony of Mosher and his mother and the in-person testimony of an expert, John Sadowski, D.D.S. Krahenbuhl presented his own testimony and the affidavits of his expert, Terry Kippa, D.D.S. In addition, both parties utilized the documentary evidence of Mosher's records and x-rays.

¶ 10. On November 20, 2001, ALJ Black filed a proposed decision with the Department of Regulation and Licensing recommending that the DEB's complaint be dismissed. ALJ Black found that the State had failed to prove by a preponderance of the evidence that Krahenbuhl had violated Wis. Stat. § 447.07(3)(a) and (h) or Wis. Admin. Code § DE 5.02(5). The ALJ also found that the Division's witness, Sadowski, was not qualified to testify as an expert witness. On December 6, 2001, the Division filed a motion to remand the matter to ALJ Black for additional findings of fact. Krahenbuhl opposed the Division's motion.

¶ 11. On May 2, 2002, the DEB issued its final decision and order without remanding the matter to the ALJ. The DEB's decision was contrary to the ALJ's recommendation and found that Krahenbuhl had violated Wis. Stat. § 447.07(3)(a) and (h) and Wis. Admin. Code § DE 5.02(5). The DEB held that Krahenbuhl had substantially departed from the standard of care ordinarily exercised by a dentist. The DEB suspended

Krahenbuhl's license for six months, prohibited Krahenbuhl from performing endodontic procedures, and directed that Krahenbuhl's patient records be monitored for a period of not less than two years.

¶ 12. Krahenbuhl filed a petition for judicial review of the DEB's decision. On October 27, 2002, the circuit court ordered the matter remanded to the DEB, ruling that the DEB had failed to first consult with the ALJ before issuing its decision rejecting the ALJ's recommendation. The DEB complied and, after consulting the ALJ, issued a further Final Decision and Order on December 6, 2002, again finding that Krahenbuhl had engaged in unprofessional conduct. The DEB again suspended Krahenbuhl's license for six months and imposed other conditions on Krahenbuhl's practice.

¶ 13. On December 20, 2002, Krahenbuhl filed another petition for judicial review of the DEB's latest decision. Krahenbuhl argued, among other things, that (1) the statute of limitations in WIS. STAT. § 893.93(1)(a) barred the DEB's complaint, (2) the DEB's decision improperly placed the burden of proof on Krahenbuhl and (3) the DEB's decision was not based on substantial evidence. Krahenbuhl's petition requested a stay of the DEB's order and dismissal of the underlying complaint.

¶ 14. Following briefing by the parties, the circuit court issued an oral decision on September 23, 2003, rejecting Krahenbuhl's challenges and denying his request for a stay. The court entered a written order reflecting its decision on October 13, 2003. Krahenbuhl appeals.

## DISCUSSION

### Standard of Review

¶ 15. "In an appeal involving an administrative agency's decision, this court reviews the decision of the administrative agency, not that of the circuit court." *Painter v. Dentistry Examining Bd.*, 2003 WI App 123, ¶ 8, 265 Wis. 2d 248, 665 N.W.2d 397 (citation omitted). An agency's factual findings will be upheld on appeal if supported by substantial evidence. *Jicha v. DILHR*, 169 Wis. 2d 284, 290, 485 N.W.2d 256 (1992); WIS. STAT. § 227.57(6).[3]

¶ 16. We will not reverse an administrative decision even if it is against the great weight and clear preponderance of the evidence where there is substantial evidence to sustain it. *Vill. of Menomonee Falls v. DNR*, 140 Wis. 2d 579, 594, 412 N.W.2d 505 (Ct. App. 1987). Substantial evidence, for the purpose of reviewing an administrative decision, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

¶ 17. With respect to our review of the DEB's conclusion of law, the supreme court recently set forth

---

[3] WISCONSIN STAT. § 227.57(6) provides:

If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.

the levels of deference to be afforded on review. *Brown v. LIRC*, 2003 WI 142, ¶¶ 13–16, 267 Wis. 2d 31, 671 N.W.2d 279.

Over time, we have developed a three-level approach to an agency's conclusions of law: a court gives an agency's conclusion of law no deference (the court makes a de novo determination of the question of law); a court gives an agency's conclusion of law due weight deference; or a court gives an agency's conclusion of law great weight deference. The appropriate level of scrutiny a court should use in reviewing an agency's decision on questions of law depends on the comparative institutional capabilities and qualifications of the court and the agency to make a legal determination on a particular issue.

No deference is due an agency's conclusion of law when an issue before the agency is one of first impression or when an agency's position on an issue provides no real guidance. When no deference is given to an administrative agency, a court engages in its own independent determination of the questions of law presented, benefiting from the analyses of the agency and the courts that have reviewed the agency action.

Due weight deference is appropriate when an agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than a court to interpret and apply a statute. Under the due weight deference standard "a court need not defer to an agency's interpretation which, while reasonable, is not the interpretation which the court considers best and most reasonable."

Great weight deference is appropriate when: (1) an agency is charged with administration of the particular statute at issue; (2) its interpretation is one of long standing; (3) it employed its expertise or specialized knowledge in arriving at its interpretation; and (4) its

interpretation will provide uniformity and consistency in the application of the statute. In other words, when a legal question calls for value and policy judgments that require the expertise and experience of an agency, the agency's decision, although not controlling, is given great weight deference.

*Id.* (footnotes omitted).

¶ 18. The parties dispute the level of deference to be afforded the DEB's conclusions of law in this case. Krahenbuhl contends that de novo review is appropriate because the issues presented on appeal—whether the statute of limitations applies and whether the DEB acted as its own expert and shifted its burden to Krahenbuhl—present questions of law which are within this court's area of expertise. The DEB contends that its conclusions of law are entitled to great weight deference because it has been charged with administering the licensing requirements for dentists under WIS. STAT. § 447.07 and has long maintained that its authority to regulate licensure is not subject to a statute of limitations.

¶ 19. We conclude that de novo review is appropriate as to the statute of limitations question. The statutory construction and application of WIS. STAT. § 893.93(1)(a) to a licensing disciplinary proceeding presents a question of law that the DEB has no special expertise in addressing. However, Krahenbuhl's remaining challenges, while framed as due process claims, travel to the evidence presented to the DEB and, therefore, are subject to the substantial evidence standard.

### *Statute of Limitations*

¶ 20. The statute of limitations at issue in this case is set out in WIS. STAT. § 893.93(1)(a). It states:

> **Miscellaneous actions. (1)** The following actions shall be commenced within 6 years after the cause of action accrues or be barred:
>
> (a) An action upon a liability created by statute when a different limitation is not prescribed by law.

¶ 21. Krahenbuhl contends that an action brought by a professional licensing board is an "action upon a liability created by statute" under this statute. Krahenbuhl argues that "liability" is a broad term, which includes his responsibilities, obligations and duties under the administrative code regulations. As we have noted, whether WIS. STAT. § 893.93(1)(a) applies to the disciplinary proceeding in this case presents a question of law which we review de novo.

¶ 22. The DEB contends that its enforcement of the regulations governing Krahenbuhl, a licensee of the State, does not arise from a liability created by statute. In support, the DEB cites to *Kenosha County v. Town of Paris*, 148 Wis. 2d 175, 434 N.W.2d 801 (Ct. App. 1988), for the proposition that the courts have consistently given a narrow construction to WIS. STAT. § 893.93(1)(a). In *Kenosha County*, the court of appeals held that the term "liability" did not apply in an action seeking to void a town zoning ordinance that was enacted without county approval. *Kenosha County*, 148 Wis. 2d at 178, 187. The town argued that the "liability" was the statutory duty of the town to seek county approval of its ordinance. *Id*. at 187. The court of appeals held:

> We have examined the type of cases to which sec. 893.93(1)(a), Stats., has been applied, and we conclude

that this is not such a case. Section 60.74, Stats. (1967), establishes prerequisites for the validity of a town zoning ordinance, but it does not hold the town "liable" for a violation thereof. There is no "liability" created by sec. 60.74 which would require that an action to determine an ordinance's validity be commenced within six years pursuant to sec. 893.93(1)(a).

*Kenosha County*, 148 Wis. 2d at 187.

■

¶ 23. Here, while the DEB's action and sanctions against Krahenbuhl have a "liability" ring, it is the protection of the public, rather than the imposition of penalty or punishment, that lies at the core of the DEB's disciplinary proceeding against Krahenbuhl. *See State v. MacIntyre*, 41 Wis. 2d 481, 484, 164 N.W.2d 235 (1969) (addressing the primary purpose of attorney licensing/disbarment proceedings). It is well established that the objectives of professional discipline include the rehabilitation of the licensee, the protection of the public, and deterrence to other licensees from engaging in similar conduct. *Galang v. State Med. Examining Bd.*, 168 Wis. 2d 695, 700, 484 N.W.2d 375 (Ct. App. 1992).

¶ 24. In *State v. Josefsberg*, 275 Wis. 142, 150, 81 N.W.2d 735 (1957), the supreme court held that the statute of limitations did not apply to the state's action to revoke and annul a license to practice medicine issued to the defendant by the Wisconsin state board of medical examiners. The defendant's license was issued in 1927 and the state's action was not brought until 1953. *Id.* at 142, 144. The state alleged that the defendant had fraudulently obtained his license. *Id.* at 144–45.

¶ 25. In rejecting the application of the statute of limitations, the *Josefsberg* court cited to its earlier

decision in *State v. Schaeffer*, 129 Wis. 459, 109 N.W. 522 (1906), which also involved a license revocation. *See Josefsberg*, 275 Wis. at 148–49. In *Schaeffer*, the court held that a license revocation was "not an action to enforce a penalty or forfeiture, but a civil action to set aside a certificate of registration" and, therefore, the action was not barred by any statute of limitation. *Josefsberg*, 275 Wis. at 149. Noting that "[t]here is no special provision in the statutes barring actions of this nature within any prescribed time," the *Josefsberg* court stated, "We are aware of no valid reason for departing from the principle enunciated in *State v. Schaeffer* to the effect that the general statutes of limitation do not apply to actions brought for the revocation of a physician's license procured through fraud." *Josefsberg*, 275 Wis. at 150.

¶ 26. Krahenbuhl contends that *Josefsberg* does not apply in this case because *Josefsberg* involved a continuing violation—the continuing use of a license obtained by fraud—whereas Krahenbuhl's case involves a singular, capsulized event concerning his treatment of Mosher. Krahenbuhl argues that while a license revocation is not an action to enforce a penalty or forfeiture, the instant DEB action is exactly that, and therefore the general statute of limitations applies.

¶ 27. We reject Krahenbuhl's attempt to distinguish *Josefsberg*. As in a license revocation proceeding, the DEB's proceeding in this case focused on the qualifications of a licensee and the responsibility of the DEB to assure that the public is protected from persons who may be providing improper or inadequate treatment. This is true whether the DEB has improperly licensed that person in the first instance or whether a properly licensed person is performing in a manner which substantially departs from the ordinary standard of care.

As the court observed in *Strigenz v. Department of Regulation and Licensing*, 103 Wis. 2d 281, 287, 307 N.W.2d 664 (1981):

> The state has created the Dentistry Examining Board and the provisions of ch. 447, Stats., to assure the public that only competent persons will practice dentistry. When the professional license is issued to a dentist, the state assures the public of the competence of that person. *As long as that person holds the dentistry license,* the state of Wisconsin continues to assure the public of his or her competence as a dentist. The state does not rank nor rate the competence of the dentist but at the very least, *the state does assure the public that the licensed dentist is competent to perform at a minimal standard as determined by others in the profession.* (Emphasis added.)

¶ 28. Krahenbuhl additionally argues that the public interest reasoning relied on by the *Josefsberg* line of cases has effectively been overruled by *State v. Holland Plastics Co.*, 111 Wis. 2d 497, 331 N.W.2d 320 (1983), and *State v. Chrysler Outboard Corp.*, 219 Wis. 2d 130, 580 N.W.2d 203 (1998). In both *Holland* and *Chrysler*, the supreme court concluded that the state's actions were subject to statutes of limitations. *Holland*, 111 Wis. 2d at 504 (applying a six-year statute of limitations to the state's action against Holland for negligent construction of a University of Wisconsin building); *Chrysler*, 219 Wis. 2d at 145 (applying a general ten-year statute of limitations to the state's action to collect penalties for violations of the Spills law).

¶ 29. We reject Krahenbuhl's reliance on *Holland* and *Chrysler* for two reasons. First, neither case concerned WIS. STAT. § 893.93(1)(a), the statute at issue in this case. Thus, neither case had occasion to expressly

643

discuss the "action upon a liability created by statute" language that lies at the crux of this case.

¶ 30. Second, even allowing that the defendants' liability in *Holland* and *Chrysler* is the "liability" contemplated by WIS. STAT. § 893.93(1)(a), we see a marked difference between an original circuit court proceeding that seeks damages flowing from a breach of contract (*Holland*) or fines for environmental violations (*Chrysler*) on the one hand and an administrative proceeding which supervises and regulates licensees on the other. The *Josefsberg* line of cases expressly recognize that a state action against a licensee is not principally about damages, penalties or forfeitures but rather is about the protection of the public. *See also Doersching v. Funeral Dirs. & Embalmers Examining Bd.*, 138 Wis. 2d 312, 328, 405 N.W.2d 781 (Ct. App. 1987) ("The state's purpose in licensing professionals is to protect its citizens. *Strigenz*, 103 Wis. 2d at 286, 307 N.W.2d at 667. License revocation is the ultimate means of protecting the public short of fining or imprisonment.").

¶ 31. We conclude that WIS. STAT. § 893.93(1)(a) does not apply to disciplinary proceedings, the core purpose of which is not to punish the provider but to protect the public and to ensure the performance of licensees meets the accepted standard of care. We therefore conclude that the DEB's disciplinary proceeding against Krahenbuhl is not time-barred.

*Due Process Challenge/Substantial Evidence*

¶ 32. Krahenbuhl next raises a due process challenge, claiming that the DEB acted as its own expert contrary to *Gilbert v. State Medical Examining Board*,

119 Wis. 2d 168, 349 N.W.2d 68 (1984), and that the DEB improperly shifted the burden of proof to him. Because this proceeding affects Krahenbuhl's license, which is necessary to engage in his profession, Krahenbuhl is entitled to the procedural protections of the due process clause. *See Stein v. State Psychology Examining Bd.*, 2003 WI App 147, ¶ 16, 265 Wis. 2d 781, 668 N.W.2d 112, *review denied,* 2003 WI 126, 265 Wis. 2d 419, 668 N.W.2d 559 (Wis. Aug. 13, 2003) (No. 02–2726). However, Krahenbuhl's challenges, while couched in terms of due process, are essentially challenges to the sufficiency of the evidence to support the DEB's findings and conclusions of law and we treat them as such.

¶ 33. Turning first to Krahenbuhl's contention that the DEB acted as its own expert, we observe *Gilbert*'s holding that a board "cannot rely on the expert knowledge of its members to make such inferences from inconclusive testimony. Its actions must be based only upon the record before it. The Board may not substitute its knowledge for evidence which is lacking." *Gilbert,* 119 Wis. 2d at 205.

¶ 34. In its decision, the DEB found that Krahenbuhl had overfilled the distal canal of Mosher's tooth 18. The DEB concluded that by failing to properly perform the root canal therapy on Mosher and by failing to properly address the complications of that root canal treatment, Krahenbuhl engaged in conduct warranting disciplinary action. In making these findings, the DEB relied on the evidence, not on the contribution of its own expertise de hors the record.

¶ 35. Krahenbuhl contends that the DEB acted as its own expert witness in the finding that he misrepresented the x-ray of Mosher's tooth 18 as taken following the endodontic procedure on July 11, 1994. Krahenbuhl argues that the Division's expert, Sadowski, had re-

treated from his position that the July 11, 1994 x-ray did not depict Mosher's tooth 18 following the root canal procedure. From this, Krahenbuhl reasons that there was no other testimony to support the DEB's finding on this matter. However, the DEB did not view the sequencing of the x-rays as a critical issue. Rather, it stated:

> For the purpose of this matter, it is not necessary for the Board to determine the date when the x-ray . . . was taken or the specific treatment or sequence of treatment provided by [Krahenbuhl] in September 1993 and July 1994. [Krahenbuhl's] violations relate to the facts that he overfilled the distal root canal of Tooth #18 . . . and did not take a post treatment x-ray, or if one was taken, did not utilize it to rectify the overfill.

Moreover, the DEB's decision addresses Krahenbuhl's concerns regarding Sadowski's testimony in its decision and states that its finding as to the sequence of the x-rays is based on other testimony from Sadowski, the affidavit of Kippa who was Krahenbuhl's expert, the opinion of the ALJ, Mosher's patient records, and the billing and insurance records.

¶ 36. While Krahenbuhl additionally challenges the DEB's use of billing records, the fact remains that there is substantial evidence, meaning such relevant evidence that a reasonable mind might accept as adequate, to support the DEB's conclusion that the July 11, 1994 x-ray was not taken on that date. The affidavit of Krahenbuhl's expert, Kippa, stated that the x-rays labeled July 5 and July 11 appeared to be in reverse chronological order and that the crown depicted in the July 5, 1994 x-ray is the same crown depicted in LeMaster's April 29, 1996 x-ray. However, that crown is not depicted in the July 11, 1994 x-ray.

¶ 37. We conclude that there is substantial evidence to sustain the DEB's decision. While Krahenbuhl correctly argues that there is also evidence in the record that might support a contrary finding, we will not reverse an administrative decision even if it is against the great weight and clear preponderance of the evidence where there is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Vill. of Menomonee Falls*, 140 Wis. 2d at 594. We are satisfied that such evidence exists in this case and that the DEB did not act as its own expert in reaching its decision.

¶ 38. Krahenbuhl next argues that the DEB shifted its burden of proof to him. Specifically, Krahenbuhl argues that the DEB based its decision on the premise that it was Krahenbuhl's duty to prove that something else caused the apparent overfill of Mosher's tooth. Again, Krahenbuhl's argument essentially boils down to an evidentiary challenge.

¶ 39. First, Krahenbuhl argues that the Division failed to prove that the x-ray was not taken on July 11, 1994, despite the ALJ's finding that the x-ray jacket dated July 11, 1994, provided unrebutted evidence that the x-ray was taken on that date. As discussed above, there was evidence that supported the DEB's finding that the x-ray was out of sequence regardless of the notation on its jacket. Moreover, the crux of the DEB concern regarding this x-ray was not *when* it was taken, but rather *whether it correctly represented the post-treatment condition of Mosher's tooth 18*. Hence, the DEB's observation that "it is not necessary for the Board to determine the date when the x-ray . . . was taken or the specific treatment or sequence of treatment provided by [Krahenbuhl]." Rather, the DEB saw

this information as bearing on: (1) whether the x-ray conveyed false information, and (2) the adequacy of Krahenbuhl's record keeping procedures.

¶ 40. Krahenbuhl also argues that the Division failed to show how Krahenbuhl found that Mosher had wet root canals on July 5, 1994, if the root canal filling was already in place, or how the "overfill" caused the condition of Mosher's tooth as it was found on April 29, 1996, when there were other possible causes such as decay due to patient neglect or intervening treatment. Again, Krahenbuhl overlooks certain of the evidence that was presented to the DEB. Both Mosher and his mother testified that Mosher had not received any treatment other than that provided by Krahenbuhl and the later treatment by LeMaster. The Division was not required to scour the innumerable other potential sources of treatment when Mosher and his mother—the two persons with firsthand knowledge on the topic—unequivocally stated that no such other treatment occurred.

¶ 41. Further, the DEB's focus was on the question of whether Krahenbuhl had overfilled Mosher's tooth and there was substantial evidence presented at the hearing that he had. The DEB relied on LeMaster's records, the affidavit of Kippa and the testimony of Sadowski in concluding that Mosher's tooth 18 had been overfilled. This, coupled with testimony that Mosher had not received any intervening treatment, that resorption would not have caused such an extreme overfull, and that routine dental neglect would not cause the extension of gutta percha into the jawbone provided the DEB with a solid basis to conclude that Krahenbuhl was responsible for the overfill.

¶ 42. Finally, although the DEB did not expressly state that Krahenbuhl was not a credible witness, certain of its statements indicate that concern. The DEB rejected Krahenbuhl's several explanations for the overfill. The DEB rejected Krahenbuhl's explanation for his placement of a permanent crown as "far-fetched." The DEB represented Krahenbuhl's explanations as "contrary to logic." Finally, the DEB noted Krahenbuhl's prior criminal conviction for false representation as suggesting a pattern of misrepresentation in his practice.

## *CONCLUSION*

¶ 43. We conclude that WIS. STAT. § 893.93(1)(a) does not apply to disciplinary proceedings, the core purpose of which is not to punish the provider but to protect the public and to ensure the performance of licensees meets the accepted standard of care. We therefore conclude that the DEB's disciplinary proceeding against Krahenbuhl is not time-barred. We further reject Krahenbuhl's due process arguments and conclude that the DEB's decision is supported by substantial evidence. We affirm the circuit court's order upholding the DEB's decision.

*By the Court.*—Order affirmed.